**BURLESON et al. v. RAWLINS, Judge.**

**No. 13486.**

Court of Civil Appeals of Texas. Dallas.

July 26, 1943.

Rehearing Denied Oct. 8, 1943.

Geo. K. Holland, of Dallas, for relators.

Storey, Sanders, Sherrill & Armstrong, of Dallas, for respondent.

LOONEY, Justice.

This is an original application by Mrs. Wallace Anthony Burleson, joined pro forma by her husband M. M. Burleson, against Honorable John A. Rawlins, Judge of the 116th Judicial District Court of Dallas County, seeking permission, without payment of cost or giving security therefor, to prosecute a cause of action for damages in a suit originally filed in the 101st Judicial District Court of Dallas County, by Wallace Anthony, a feme sole (since married to M. M. Burleson), against B. P. Blasingame, et al., being cause No. 63180–F. on the docket of said Court.

The facts, in short, are these: The suit was filed on February 24, 1942, by Wallace Anthony, plaintiff, against B. P. Blasingame et al., for the recovery of damages resulting from personal injuries allegedly caused by the negligence of the defendants. At the institution of suit, plaintiff filed an affidavit of inability to pay the court cost or give security therefor, in compliance with Rule 145, Texas Rules of Civil Procedure, and later, on April 11, 1942, filed an affidavit of inability to pay a jury fee or give security therefor. On March 21, 1942, defendants filed their original answer but failed to contest plaintiff's affidavits of inability to pay cost or give security until November 24, 1942, terms of court having intervened between the filing of the affidavit of inability and filing of the contest thereof, and a full term had intervened between the filing of the affidavit of inability to pay a jury fee or to give security therefor, and the contest. On January 10, 1943, plaintiff and M. M. Burleson were married, after which an amended petition was filed by plaintiff in which her husband joined pro forma as plaintiff.

At the time defendants filed the contest, plaintiff, in open court, objected to its consideration on the ground that it came too late; thereafter, other pleadings were filed by both parties, pre-trial hearings were had, but the hearing on the contest of the affidavit of inability was postponed, subject to plaintiff's objections as above mentioned.

Thereafter, the cause was set for trial on its merits for a date in May, reset for a day in June, and again was reset for July 6, 1943, at which time the parties announced ready for trial, and the cause was transferred to the 116th Judicial District Court for trial; after which, and when called for trial in the latter court, before a jury was selected, the defendants called to the attention of court their contest of plaintiff's affidavits of inability. At this juncture, plaintiffs called to the court's attention the provisions of Rule 145, Texas Rules of Civil Procedure, and insisted that the contest came too late and moved to dismiss same. The court overruled the motion to dismiss, heard evidence, sustained the contest and entered an order requiring plaintiffs to either give a good and sufficient bond for costs or deposit with the Clerk of Court the sum of $75 in cash, in default of which plaintiff's suit would be dismissed.

■ The order of court sustaining the contest not being appealable, we think plaintiff pursued the proper procedural remedy in applying for the writ of mandamus. See Thomas v. Eskew, Tex.Civ. App., 81 S.W.2d 713.

■ The affidavits in forma pauperis, filed by plaintiff, constituted prima facie evidence of the facts therein alleged, and not having been contested by defendants until after the expiration of the term of court when filed, became conclusive and thereafter were incontestable. This, we think, is the plain meaning of Rule 145, Texas Rules of Civil Procedure. As shown above, when the belated contest was filed, plaintiff objected to its consideration on the ground that it came too late, and, consistent with this contention, when defendants called up the contest at the time the trial of the case on its merits was being entered upon, plaintiff again protested and filed a formal motion to dismiss the contest for the reasons stated. The court overruled plaintiff's motion, heard and sustained the contest, and made the order heretofore mentioned.

We think the court erred in not dismissing the belated contest. The source of Rule 145 was Art. 2070, R.C.S.; the change made by the rule was the introduction of the provisions directing that a contest of an affidavit of inability be heard during the term at which the affidavit is filed. This procedure was not pursued in the instant case, plaintiff's affidavit of inability became incontestable at the expiration of the term when filed, hence plaintiff's motion to dismiss the contest should have been sustained. However, on careful consideration of the evidence offered at the hearing, we think the conclusion inescapable that plaintiff sustained the truth of the allegations of inability to pay the cost or give security therefor. Plaintiff testified that before being injured, she was earning $100 per month; that she incurred large medical bills, some of which were still hanging over her, unpaid, and, at the time of the hearing, was without work; that the only property she owned was her clothing, a wrist watch, wedding ring, and a piano costing $400, purchased in 1941, encumbered with a mortgage of $200; that her husband, whom she married after the institution of the suit, was without property except an automobile encumbered with a mortgage of $500; that they resided in the town of Irving and her husband was working at a defense plant in Fort Worth and used the car for daily trips going to and·from his work; that he earned 56¢ per hour—sometimes as much as $36 per week—but helped to take care of his mother, and that it took all they made to get along; that they had no way of raising money for court costs and could not give bond as security. It also appeared that after the court made the order sustaining the contest and requiring the execution of a bond for costs, or the deposit in court of $75 in cash, plaintiffs made further efforts to comply with this order but could find no one who would go on their bond, and were unable to procure the money for the cash deposit. The defendants offered no evidence at the hearing.

■ The undisputed evidence shows, we think, that plaintiffs had no money with which to pay costs and were unable to raise any on the only property they owned, that is, a secondhand piano, mortgaged for $200, doubtless could not be sold for more than that sum, and the automobile which, in addition to being exempt property, was mortgaged for $500, and that, after efforts made, were unable to make bond for costs. For the reasons stated, we conclude, first that the court erred in overruling plaintiffs' motion to dismiss the contest because filed too late, and, second, the hearing on the merits, we think, showed indisputably that the truth of the affidavits of inability was established (see Rutherford v. Vandygriff, Tex.Civ.App., 73 S.W.2d 569; Van Benthuysen v. Gengler, Tex.Civ.App., 100

S.W.2d 116; Aguirre v. Hanney, District Judge, Tex.Civ.App., 107 S.W.2d 917), hence, in either case, plaintiffs were entitled to the issuance of mandamus as prayed, and it is so ordered.

BOND, Chief Justice (dissenting).

I base my dissent on the ground that relator has a clear, adequate remedy at law to effectually secure her rights; and where such exists, this Court is without authority to issue the harsh mandatory injunction to compel the District Judge to perform his discretionary duty. The trial Judge heard the testimony and, from it, made the judicial determination, which he cannot be made to alter by mandatory command of this Court; his prerogative to make the order should not be interfered with by extrajudicial order of this Court. The trial court, in the exercise of judicial discretion, had the right to determine the issue, reviewable on appeal.

The order complained of by relator was clearly interlocutory; thus it became the duty of relator, before dismissal of the cause, to show that she had complied with the order, or was unable to do so within the 20 days grace allowed. And if, forsooth, the trial court then dismissed the cause on the showing made, relator had the right to except to the ruling and judgment, make appropriate assignment, and appeal to this Court for relief. This Court may then review the trial court's action in dismissing the suit, duly consider the testimony, and render a decision thereon. If the record on appeal should show clearly that the trial court abused his discretion, which is not here determinable, then, of course, a reversal with appropriate instructions may well be expected.

Authorities are numerous, collated in 28 Tex.Jur., p. 533 et seq., holding that a mandamus will not issue to compel a public officer to perform an official act, unless the aggrieved party has no other adequate means of redress. The writ will issue in an interlocutory order only when allowed by the Legislature, or when the act or duty is ministerial in character. It is not available to control or review the action of an official upon matters involving the exercise of discretion or judgment. Pursuant to the rule above stated, mandamus will not issue to control or revise the judgment or discretion of the Honorable John A. Rawlins, District Judge. As it stands today, the cause is pending, with the interlocutory order requiring relator, within 20 days, to furnish security or deposit $75 in court. There is no law authorizing this Court to review the action of the trial court on such interlocutory orders, hence, in the absence of an appeal from final judgment of dismissal, this Court is without authority to issue the mandamus.

The law now is as it has been for more than fifty years, that a plaintiff may be ruled to give security for cost; the only change being in the recent Rules of Civil Procedure, requiring the court making the order to allow plaintiff 20 days (Rule 143), whilst the statute (Art. 2068) allows the plaintiff "on or before the first day of the next term of the court" to comply with the order. Hence, the decisions and procedure heretofore in force on the subject must necessarily be followed as authorities. Frazer v. Moore, 28 Tex.Civ.App. 427, 67 S.W. 427, 428, is an appeal from judgment dismissing a suit because of failure on appellant's part to comply with the rule to give security for cost, as provided by statute. After judgment, appellant filed motion to reinstate the cause, which was overruled; assigned error on the action of the trial court and followed with appeal. Chief Justice Conner, of the Fort Worth Court of Appeals, said: "We have carefully considered the assignment presenting this question, but have been unable to concur in such conclusion. On the presentation of the motion, no proof whatever was offered of the truth of the allegations in the original petition from which the court could determine that appellant had merit in her case; nor was any excuse whatever offered why the rule for costs had not been complied with. Appellant on the hearing of the motion did not testify; neither did her counsel, nor was other evidence of excuse offered; and for aught that appears in the evidence on the hearing of the motion appellant may not only have actually known of the rule requiring security for costs, but may have willfully disregarded the same. So far as we have been able to find, it has been uniformly held that, to entitle a party to favorable action upon such a motion to reinstate, sufficient reason must be shown why the party failed to comply with the order of the court requiring security for costs. Union Bank v. Hudgeons, 3 Tex. 9; Clute v. Ewing, 21 Tex. 677, 678; Cook v. Ross, 46 Tex. 263. *At most, it was a matter of judicial discretion in the trial court;* and we have been unable to say that in the instance be-

fore us such discretion has been abused." (Italics supplied.) In Gilmer v. Beauchamp, 40 Tex.Civ.App. 125, 87 S.W. 907, plaintiff appealed from a final judgment of dismissal, and the issue on the matter of cost, as here, was preserved by bill of exception and assigned as error. The Court of Appeals had jurisdiction to determine the issue. The same question was also raised on appeal from final judgment in Gipson v. Williams, Tex.Civ.App., 27 S.W. 824, and in Bartlett v. Buckner, Tex.Civ. App., 295 S.W. 214. Many cases might be cited to the same effect; there is none to the contrary.

In 28 Tex.Jur., p. 530, the rule is stated: "The writ of mandamus cannot take the place, or be used to perform the office, of an appeal or writ of error; and it does not lie where the relator has thereby an effective and adequate remedy. So the writ will not issue when it appears that the relator could have obtained the relief sought by taking or claiming it in, an appeal; * * *." This text is supported by many authorities listed in the footnotes. Of course the existence of a remedy by appeal or by writ of error will not prevent issuance of mandamus if such remedy is inadequate or tedious. Surely, in this case, where the statement of facts consists of only eight pages, and this Court up with its docket, an appeal with appropriate assignment would not be inadequate, tedious, or work irreparable injury to relator.

In Coke v. Pottorff, Tex.Civ.App., 140 S. W.2d 586, 587, the trial court denied appellant a nonsuit; the aggrieved party sought a mandatory injunction to compel the trial court to enter the order of dismissal. The San Antonio Court of Appeals said: "It is a general rule that it is reversible error to deny leave to a plaintiff to take a nonsuit upon his cause of action, even in the presence of a cross-action by the defendant; the plaintiff may take a nonsuit in any event, but his doing so will not be permitted to prevent the defendant from proceeding with his cross-action for affirmative relief. 15 Tex.Jur. pp. 236, 243, §§ 3, 10. An order overruling a plaintiff's motion for leave to take a nonsuit is not itself appealable. 3 Tex.Jur. p. 135, § 70; Texas & P. Ry. Co. v. Ft. Worth St. Ry. Co., 75 Tex. 82, 12 S.W. 977. Nor is the writ of mandamus available to take the place or perform the office of appeal. 22 Tex.Jur. p. 573, § 32. For, while it is error upon the part of a trial court to overrule

a timely motion for leave to take a nonsuit, mandamus will not lie to compel the trial judge to correct such error. 28 Tex. Jur. p. 579, § 36; Matlock Miller & Dycus v. Smith, 96 Tex. 211, 71 S.W. 956, 957. 'If a judge errs,' said Chief Justice Gaines in the cited case, 'however palpably erroneous his decision may be, a mandamus is not the remedy for the correction of his error.' Obviously, the remedy of the injured party is to timely make and thenceforward preserve his exception, and present it in an appeal from the final judgment in the case. Cox v. Texas Electric Ry., Tex.Civ.App., 32 S.W.2d 669, affirmed Tex.Com.App., 49 S.W.2d 725, 89 A.L.R. 11; Cornelius v. Early, Tex.Civ.App., 24 S.W.2d 757, affirmed 120 Tex. 335, 39 S.W.2d 6; Davis v. Wichita State Bank & Trust Co., Tex. Civ.App., 286 S.W. 584; Weil v. Abeel, Tex.Civ.App., 206 S.W. 735; Apache Cotton Oil & Mfg. Co. v. Watkins & Kelly, Tex.Civ.App., 189 S.W. 1083." So in the instant case, the order of the trial court requiring security for cost, or payment into court of $75, is not itself appealable-interlocutory; and if it can be said that the trial court erred, his decision may not be reviewed by an appellate court by original application for mandamus. His redress is, as said by Chief Justice Smith in the Coke-Pottorff case, "to timely make and thenceforward preserve his exception, and present it in an appeal from the final judgment in the case." In Matlock Miller & Dycus v. Smith, cited above, Chief Justice Gaines said a mandamus is not the remedy to effect a redress for an error of the trial court in matters interlocutory, or in such matters as involve discretion, or judicial determination; plaintiff was denied the right to dismiss his suit, thus discharging a receiver theretofore appointed by the court. Original application for mandamus was presented to the Supreme Court, which was denied, holding "that, where a district judge had entered a judgment * * * a writ of mandamus would not lie to compel him to enter a different judgment, although that already rendered might be erroneous."

Our Supreme Court said in State v. Ferguson, 133 Tex. 60, 125 S.W.2d 272, 274, opinion by Judge Hickman, Com'r, that a mandatory writ of injunction "will not lie to correct a merely erroneous or voidable order of the trial judge, but will lie to correct one which he had no power to enter, and which was, therefore, void. Yett v. Cook, 115 Tex. 175, 268 S.W. 715, 281 S.W. 843; Seagraves v. Green, 116 Tex.

220, 288 S.W. 417; Pickle v. McCall, 86 Tex. 212, 24 S.W. 265." In Yantis v. Mc-Callum, original application for mandamus was presented to this Court to compel Judge McCallum to set aside his order sustaining demurrer to plaintiff's petition for bill of recovery. This Court, 121 S.W. 2d 610, 611, speaking through Justice Looney, said: "Courts of Civil Appeals are without jurisdiction to issue extraordinary writs, except in aid of or to enforce their appellate jurisdiction, as authorized by Art. 1823, R.S., and to compel a judge of the District or County Court, as the case may be, to proceed to trial and judgment in a cause, as authorized by Art. 1824, R.S., Vernon's Ann.Civ.St. art. 1824. * * * The action of the trial judge, in sustaining the demurrer to the bill of discovery, was a matter peculiarly within his judicial discretion, hence we are without authority to direct the judge to reverse his action, overrule the demurrer, and grant the relief sought in the bill of discovery. Oak Downs, Inc., v. Watkins, Tex.Civ.App., 85 S.W.2d 1100; Adams v. Mitchell, Tex.Civ. App., 86 S.W.2d 884."

The record further shows that relator's husband voluntarily made himself a party plaintiff to the cause of action; hence he is amenable to the rule to give security for cost. The record shows that he made no effort to comply with the order of the court. The affidavit of his wife is not sufficient to relieve him of the burden of showing that he could not furnish security or pay into court the required amount, or part of it, as required by the trial Judge. It was his duty to make the effort, pay what he could and show that he could do no more. The testimony is that plaintiff could pay eight or ten dollars on the cost. If so, and that was all, they should be required to show their inability to do more. In Pendley v. Berry, 95 Tex. 72, 65 S.W. 32, our Supreme Court held that an appellant who was able to pay part of the required costs of an appeal, but unable to secure the full amount, must pay such part in order to be entitled to prosecute his cause of action. This gesture of equity was followed by Chief Justice Alexander in Pinchback v. Hockless, 139 Tex. 536, 164 S.W.2d 19, 20. He said: "Where, from the record as a whole, it really appears that a party is unable to pay the costs, or give security therefor, the court should unhesitatingly grant the relief prayed for. On the other hand, it must be remembered

that if a party is relieved of the necessity of paying the costs for which he is otherwise liable, those who file the papers, serve the process, or prepare the statement of facts or transcript may have to do their work without pay. Likewise, the witnesses who are compelled to leave their employment in order to attend court may have to go uncompensated for the time lost by them. Some of them may be as poor as the party who seeks to be exempted from the payment of the costs. No man should be allowed the privilege of requiring others to thus work for him without pay if he is really able to pay the costs, or give security therefor. The rules which exempt the poor from the payment of costs serve a useful purpose, but if the courts allow the privilege granted thereby to be abused by those who, in fact, ought to pay, this may lead to the abolition of the exemption. * * * Obviously, if a laborer was barely earning the necessities of life for himself and family, ordinarily he should not be required to mortgage his hand tools or household furniture in order to raise funds to pay the court costs. On the other hand, if a party has a credit rating that will enable him to borrow the money, or if he is earning a substantial income, although he is expending it as rapidly as it comes in, or if he owns an automobile or truck or other valuable property, although exempt from execution, which he could mortgage or otherwise dispose of and thereby secure the necessary funds without depriving himself and his family of the necessities of life, he should be required to pay the costs, or give security therefor."

In this case, the wife's testimony showing that she could pay a part of the cost, that she and her husband have a piano, an automobile, household and kitchen furniture, that her husband receives a salary of approximately $125 per month, and that they have indebtedness, presents no excuse for not making a good-faith effort to secure the costs of court. Evidently these matters appealed to the sound discretion of the trial judge, and if, in these proceedings, this Court were called upon to decide whether the trial judge abused his discretion, the issue would indeed present a serious doubt. Then too, the husband, though a party plaintiff pro forma, is required to make the affidavit and show that he could not comply with the rule. His ability cannot be shown by proxy. Crocket v. Maxey, 4 Willson Civ.Cas.Ct.App. § 292,

18 S.W. 138; Dixie Motor Coach Corporation v. Watson, Tex.Civ.App., 138 S. W.2d 314, 315. In the Dixie Motor Coach-Watson case, the husband was a plaintiff "pro forma" as here. Judge Brown, of the Fort Worth Court, said: "We notice that a pauper's oath was filed by Geneva Watson, in the trial court, but none was filed by her husband. We hold that he is required to give security for costs, or make an affidavit in forma pauperis."

I do not wish to indulge in a discussion as to the effect of Rule 145, as to when the contest of an affidavit in forma pauperis shall be heard by the trial court. It is clear that the Rule permits the hearing "at the term of court at which the affidavit is filed"; but it will be observed that it also provides that "Such contest *may be* tried before the trial of the cause, at such time as the court may fix, at the term of court at which the affidavit is filed * * *." (Italics supplied.) In the instant case, the trial court did not fix a time to hear the contest at the term in which the affidavit was filed, and there is no mandatory requirement that same shall be done. The contest was regularly filed and heard, hence the hearing did not prejudice the rights of the parties. The rule as to when the contest shall be heard is directory. It says that same "may be" heard at the term of filing of the affidavit, not that it shall be done.

The matter here involved is procedural and, if the opinion of the majority is correct, the appellate courts may well expect that on all interlocutory orders where no appeal is specially directed by acts of the Legislature, original applications for mandamus will be filed. I cannot subscribe to the conclusion reached by the majority.