Opinion filed June 4, 2026



In The

# Eleventh Court of Appeals

_____

## No. 11-25-00213-CV

_____

## CHRISTOPHER M. PERRICONE, Appellant

## V.

## KATIE BETH PERRICONE, ET AL., Appellees

**On Appeal from the 29th District Court**

**Palo Pinto County, Texas**

**Trial Court Cause No. C51852**

## M E M O R A N D U M   O P I N I O N

Appellant, Christopher M. Perricone, filed suit against twenty-four individuals for "Interference with Possessory Interest in Children and Related Claims" and with it a "Statement of Inability to Afford Payment of Court Costs" (Statement). *See* TEX. R. CIV. P. 145(b). Appellant subsequently amended his petition to join approximately thirty additional defendants. Rhett Warren, a licensed attorney and one of the defendants named in Appellant's amended petition, filed a

motion contesting Appellant's Statement. *Id.* R. 145(e). After an evidentiary hearing, the trial court sustained Warren's contest, denied Appellant's Statement and request, and signed an order that included detailed findings. *Id.* R. 145(f)(1), (2). Appellant appeals from that order.[1] *Id.* R. 145(g). For the reasons expressed below, we affirm.[2]

## I. *Factual and Procedural Background*

This appeal, like other related appeals filed by Appellant, and there have been many,[3] originates from Appellant's and Appellee Katie Beth Perricone's underlying divorce action and subsequent child custody filings.

[1]As he did in the trial court, Appellant is also proceeding pro se on appeal; he has in nearly every related trial and appellate proceeding. Although we liberally construe briefs and other filings that are submitted by pro se parties, we hold pro se litigants to the same standards as licensed attorneys and require them to comply with all applicable laws and rules of procedure and evidence. *Mansfield State Bank v. Cohn*, 573 S.W.2d 181, 184–85 (Tex. 1978); *Barrientos v. Barrientos*, 675 S.W.3d 399, 404 n.2 (Tex. App.—Eastland 2023, pet. denied); *Aaron v. Fisher*, 645 S.W.3d 299, 312 (Tex. App.—Eastland 2022, no pet.).

[2]Three days after Appellant filed his notice of appeal in this cause, he filed a notice of nonsuit in the trial court whereby all named defendants, except Katie Beth Perricone and Vicki Scarborough, were dismissed from the underlying suit. Because he was a party to this appeal when Appellant's notice of appeal was filed, Warren filed a brief; Katie and Vicki did not.

[3]Without question, Appellant has routinely availed himself of the judicial process. By our count, Appellant has thus far submitted fourteen appellate filings, including this one, to this court, whereby he has challenged various trial court rulings and other matters in the underlying and related proceedings. *See In re Perricone*, No. 11-25-00379-CV (Tex. App.—Eastland Dec. 31, 2025, org. proceeding) (judgment); *In re Perricone*, No. 11-25-00368-CV, 2025 WL 3767948 (Tex. App.—Eastland Dec. 31, 2025, org. proceeding) (mem. op.); *In re Perricone*, No. 11-25-00371-CV (Tex. App.—Eastland Dec. 17, 2025, org. proceeding) (judgment); *In re Perricone*, No. 11-25-00288-CV, 2025 WL 2980655 (Tex. App.—Eastland Oct. 23, 2025, orig. proceeding) (mem. op.); *In re S.P.*, No. 11-25-00252-CV, 2025 WL 2797283 (Tex. App.—Eastland Oct. 2, 2025, no pet.) (mem. op.); *Perricone v. Perricone*, No. 11-25-00239-CV, 2025 WL 2617722 (Tex. App.—Eastland Sept. 11, 2025, no pet.) (mem. op.); *In re Perricone*, No. 11-25-00078-CV, 2025 WL 1184127 (Tex. App.—Eastland Apr. 24, 2025, orig. proceeding) (mem. op.); *In re Perricone*, No. 11-24-00220-CV (Tex. App.—Eastland Aug. 15, 2024, orig. proceeding) (judgment); *In re S.P.*, No. 11-24-00193-CV, 2024 WL 3607909 (Tex. App.—Eastland Aug. 1, 2024, no pet.) (mem. op.); *Perricone v. Perricone*, No. 11-21-00022-CV, 2021 WL 1033911 (Tex. App.—Eastland Mar. 18, 2021, no pet.) (mem. op.). Most recently, on April 27, 2026, Appellant filed his pro se notice of appeal from the trial court's final order that was signed in another related proceeding, our Cause No. 11-26-00129-CV. He has four pending appeals in this court, including this one.

Appellant and Katie were divorced in 2020, and the trial court, among other things, designated them as joint managing conservators of their four children. *See Perricone*, 2025 WL 1184127, at *1. In June 2024, Katie filed a motion to modify a SAPCR order signed by the trial court in which she sought to be designated the sole managing conservator of their children. *Id.* Since that time, there has been an onslaught of filings (mostly by Appellant) and related hearings before the trial court, with subsequent requests for appellate relief filed by Appellant (as noted in footnote no. 3) that we have addressed.

The dilemma here stems from Appellant's request to prosecute his suit against dozens of individuals free of charge. Initially, the district clerk filed a challenge to Appellant's Statement, which the trial denied "for non-compliance" with Rule 145(e)(1). Warren thereafter filed a contest to Appellant's Statement and, in his motion, asserted that Appellant's Statement was fraught with material falsities and misrepresentations. With his motion, Warren submitted an unsworn declaration that the contents of his motion were true and correct, which included his full name, date of birth, address, and a statement that he "declare[d] under the penalty of perjury that the foregoing [was] true and correct." *See* TEX. CIV. PRAC. & REM. CODE ANN. § 132.001(a), (c) (West 2019). Warren attached the following documents to his motion, the majority of which also included an unsworn declaration made by the declarant, including Appellant, in the respective documents, that, under penalty of perjury, the information provided therein was true and correct: (1) Appellant's Statement (unsworn declaration made "TO THE BEST OF [HIS] KNOWLEDGE); (2) a report of transactions from the Child Support Division of the Office of the Attorney General; (3) Appellant's bankruptcy petition filed in May 2021 (unsworn declaration by Appellant); (4) an unsworn declaration from Appellant's wife's ex-spouse that the ex-spouse had paid Appellant's wife child support until June 2025,

3

which included "a true and correct copy" of the divorce decree and a screenshot from his bank account that showed the most recent payments; and (5) a printout showing that Appellant owned a mobile home that was not listed on his Statement. *See* CIV. PRAC. & REM. § 132.001.

In addition, Warren asserted in his motion that: (1) Appellant was providing no child support for the benefit of his children, having made only a partial payment in September 2021; (2) Appellant did not attach proof of the public benefits he received, as the form requires, after checking the boxes in the form for the receipt of food stamps, Medicaid, and WIC; (3) Appellant's "disability" payments were from "VA disability," as shown by his bankruptcy petition, and were approximately $90 more than Appellant listed in his Statement; and (4) Appellant owned a 2014 Tesla Model S that Appellant stated was "worth $0" in his Statement, although the Kelley Blue Book value for the vehicle was approximately $4,000–$7,000. Appellant responded to Warren's motion, and the trial court scheduled an evidentiary hearing to consider Warren's contest.

The hearing proceeded on July 23, 2025; Appellant appeared, participated, and had the opportunity to challenge Warren's evidence and offer his own. At the conclusion of the hearing, and after it considered the evidence presented, the trial court sustained Warren's contest and denied Appellant's request to proceed in the case without the payment of costs. The trial court signed an order on July 25 and found that: (1) Appellant was "well-groomed, articulate, intelligent, educated, healthy and physically fit"; (2) Appellant presented no relevant or credible evidence to support his claim of indigence; (3) Appellant's arguments and evidence were uncorroborated, conclusory, and lacking in credibility; (4) Appellant's Statement contained numerous material misrepresentations; (5) Appellant received sufficient monthly income and additional revenue, income, and gifts from "an unidentified

source" to meet his lifestyle and necessary monthly expenses; (6) Appellant's monthly expenses are significantly less and his household income is more than he claimed in his Statement; (7) to the extent Appellant presented prima facie evidence of his inability to pay the costs, the presumption was rebutted; and (8) Appellant failed to meet his burden to show indigency and was required to pay all costs associated with the case.

## II. *Applicable Law and Standard of Review*

A party who claims that he is unable to afford the payment of court costs, including the cost of preparing the clerk's record and reporter's record, must file a "Statement of Inability to Afford Payment of Court Costs." TEX. R. CIV. P. 145(a), (b). The declarant—the party who files the Statement—must submit with his Statement evidence of his inability to afford to pay these costs. *Id.* R. 145(d). A rebuttable presumption that a declarant has the inability to pay costs exists if the declarant receives benefits from a means-tested entitlement program. *Id.* R. 145(d)(1). The trial court may order the declarant to pay these costs if a proper motion that challenges the Statement is filed and the declarant fails, at an evidentiary hearing, to establish his inability to afford to pay these costs. *Id.* R. 145(e), (f). At the hearing, the burden is on the declarant to prove his inability to afford the payment of these costs by a preponderance of the evidence. *Id.* R. 145(f)(1); *Higgins v. Randall Cnty. Sheriff's Office*, 257 S.W.3d 684, 686 (Tex. 2008).

The standard for determining indigency is whether the record shows that the declarant would be unable to pay all or any portion of the costs, or provide adequate security, if he truly desired and made a good-faith effort to do so. *Higgins*, 257 S.W.3d at 686 (citing *Pinchback v. Hockless*, 164 S.W.2d 19, 20 (Tex. Comm'n App. 1942)); *Rangel v. Rangel*, No. 04-23-00931-CV, 2024 WL 2165372, at *2 (Tex. App.—San Antonio May 15, 2024, no pet.). When evaluating a contested

5

claim of indigency, the trial court may consider certain types of financial and other information, including the nature, source(s), and amount of the declarant's: (1) current income; (2) real and personal property holdings; (3) other assets; (4) debts; and (5) monthly expenses. *Higgins*, 257 S.W.3d at 686–87. In this regard, as the factfinder, the trial court is the sole judge of the credibility of the witnesses and other evidence presented and the weight to be afforded such testimony and evidence, and it may, in its discretion, accept or reject all or any part of such testimony and evidence and in turn resolve any inconsistencies in the evidence. *City of Keller v. Wilson*, 168 S.W.3d 802, 819–20 (Tex. 2005); *In re Estate of Turner*, 265 S.W.3d 709, 714–15 (Tex. App.—Eastland 2008, no pet.).

We review a trial court's decision to sustain a contest to a declarant's alleged inability to afford the payment of court costs for an abuse of discretion. *Strickland v. iHeartmedia, Inc.*, 668 S.W.3d 34, 37 (Tex. App.—San Antonio 2022, no pet.); *Emerson v. Holly Lake Ranch Ass'n*, 603 S.W.3d 172, 174 (Tex. App.—Texarkana 2020, no pet.). An abuse of discretion occurs when the trial court acts and reaches a decision arbitrarily, unreasonably, or without reference to any guiding rules or principles. *Bocquet v. Herring*, 972 S.W.2d 19, 21 (Tex. 1998); *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985). There is no abuse of discretion if some evidence reasonably supports the trial court's decision or its decision is based on conflicting evidence. *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 211 (Tex. 2002).

### III. *Analysis*

Appellant raises several issues, some of which mirror others, in which he argues that the trial court's July 25 order is void. For purposes of simplicity and clarity, we construe Appellant's arguments to be that: (1) Warren does not have standing to contest Appellant's Statement; (2) the trial court violated Rule 145(e)(1)

6

because Warren's filings were "procedurally defective and . . . unsworn"; (3) the trial court's findings (a) are not supported by sufficient evidence, and (b) are unconstitutional and violate Appellant's rights to due process, fundamental fairness, and access to the courts; and (4) Rule 145 of the Texas Rules of Civil Procedure is unconstitutional.

A. *Standing*

Appellant contends that Warren does not have standing to contest his Statement. However, any *party* to the declarant's underlying suit may file a motion contesting the declarant's indigency request; the motion must be supported by sworn evidence, not merely allegations, and assert "that the [declarant's] Statement was materially false when made or that because of changed circumstances, it is no longer true." TEX. R. CIV. P. 145(e)(1); *Strickland*, 668 S.W.3d at 38; *Miles v. Miles*, No. 05-24-00018-CV, 2025 WL 3241330, at *15 (Tex. App.—Dallas Nov. 19, 2025, pet. denied) (mem. op. on reh'g).

In his amended petition, Appellant joined Warren as a defendant to the underlying suit. Although he was not formally served, Warren made an appearance in this case when he filed his motion, and he acknowledged and conceded at the hearing that doing so subjected him to the trial court's jurisdiction. Because he is a *party* to Appellant's suit, Warren would therefore have standing to contest Appellant's Statement, provided he filed a motion that substantially complied with the requirements of Rule 145(e)(1). Warren's motion does just that.

B. *Warren's Motion and Exhibits*

After the trial court denied the district clerk's challenge to Appellant's Statement for failure to comply with Rule 145(e), Warren filed a separate contest. In his motion, Warren, a licensed attorney who is presumably well familiar with the consequences of perjury and the filing of frivolous pleadings and motions, provided

an unsworn declaration as to his motion. Warren's motion also included specific allegations that were supported by relevant exhibits—which also contained unsworn declarations as to the veracity of certain statements made within these documents— that Appellant's Statement was materially false when made. *See* Civ. Prac. & Rem. § 132.001(a); Tex. R. Civ. P. 145(e)(1).

Pursuant to Rule 145(e)(1), a "motion to require the declarant to pay costs must . . . contain sworn evidence—not merely allegations—either that the Statement was materially false when made or that because of changed circumstances, it is no longer true." Tex. R. Civ. P. 145(e)(1). Rule 145 was revised in 2016, in part to include a requirement that a motion must be supported by sworn evidence when a clerk or party challenges a litigant's claim of his inability to afford the payment of costs. *Id.* R. 145 cmt. The comments to the rule's revision recognized that "evidence may come to light that the claim was false when made," and "[t]he trial court always retains [the] discretion to require evidence of an inability to afford costs." *Id.* The rule was amended again in 2021, "to reduce frivolous challenges to a Statement [and] streamline proceedings."

We conclude that Warren's contest was not a "frivolous challenge" to Appellant's Statement that the amendments to Rule 145 were designed to prevent. After the district clerk's challenge was filed, Appellant amended his petition to name fifty-one defendants, including Warren. Warren later filed his motion after Appellant joined him as a defendant in the underlying suit and following the trial court's denial of the district clerk's challenge to Appellant's Statement, informing the trial court that Appellant's Statement included numerous material misstatements and omissions. Warren's motion and the attached exhibits—submitted by an officer of the court—were sufficient to notify the trial court that an evidentiary hearing was warranted to determine (1) the alleged falsity of Appellant's Statement and (2) his

ability to pay the required costs in the underlying suit.  *See* TEX. R. CIV. P. 145(e)(1), (f)(1); *see also* CIV. PRAC. & REM. § 132.001(a), (c) (an unsworn declaration may be used in lieu of a sworn declaration, verification, or oath, provided it is made under penalty of perjury); *Gillis v. Harris Cnty.*, 554 S.W.3d 188, 192–93 (Tex. App.— Houston [14th Dist.] 2018, no pet.) (collecting cases holding that the phrase "upon penalty of perjury" and a signature are "the key to an unsworn declaration"); *cf. Rangel*, 2024 WL 2165372, at *5–6 (court reporter's written motion included unsworn declaration, but the appellant waived the issue).

Unlike the appellees' motion in *Strickland*, which "contain[ed] no evidence whatsoever" and "attachments [in a supplement that] were not verified or otherwise sworn to," Warren's motion in this case provided specific, relevant evidence to alert the trial court that Appellant's Statement may be false.  *Strickland*, 668 S.W.3d at 38.  Moreover, given the trial court's previous denial of the clerk's challenge based on the noncompliance with Rule 145(e)(1), the trial court clearly understood that mere allegations alone will not suffice to challenge a litigant's Statement.  In this instance, we conclude that the trial court had appropriate evidence before it to proceed and ultimately grant Warren's motion, as discussed below.

Nevertheless, we do not make this decision lightly.  We endeavor to construe a litigant's Statement in favor of the litigant, as we do in every appeal where a Statement is filed.  *See* TEX. R. APP. P. 20.1; *Higgins*, 257 S.W.3d at 686–88 (access to the courts and ensuring fairness are paramount considerations).  Although the trial court could have reasonably found that Warren's unsworn declaration was tantamount to a sworn declaration, verification, or oath, because it was made "under penalty of perjury," *see* CIV. PRAC. & REM. § 132.001(a), (c), an unsworn declaration may not always be sufficient.  In this regard, we do not hold that an attorney's unsworn declaration will always carry more weight than any other litigant's

declaration; rather, we emphasize an attorney's duties to the court and his awareness of the consequences of filing frivolous challenges and false documents. Despite this, when, as here, a *party* presents sufficient evidence to the trial court to support his contest, the trial court may, as it did in this case, proceed to determine whether the declarant can afford to pay costs. TEX. R. CIV. P. 145(e)(1), (f).

### C.  *The Sufficiency of the Evidence*

The standards that we employ for legal and factual sufficiency arguments depend on whether the party challenging the adverse finding bears the burden of proof on the contested issue. *Shields Ltd. P'ship v. Bradberry*, 526 S.W.3d 471, 480 (Tex. 2017); *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241–42 (Tex. 2001). In this case, Appellant bore the burden to prove that he was unable to afford the payment of the clerk's record, the reporter's record, and other costs related to the prosecution of his suit. *See* TEX. R. CIV. P. 145(f)(1); *Strickland*, 668 S.W.3d at 36. Thus, we may not reverse the trial court's order unless we conclude that (1) the evidence conclusively establishes that Appellant is unable to afford the payment of these costs, *see Shields*, 526 S.W.3d at 480, or (2) the trial court's finding that Appellant is able to afford to pay these costs is against the great weight and preponderance of the evidence, *see Dow Chem.*, 46 S.W.3d at 242; *Rangel*, 2024 WL 2165372, at *6.

The record shows, and the trial court found, numerous factual inconsistencies in Appellant's Statement and his testimony at the hearing. For example, in his Statement, Appellant claimed that he was unemployed, did not own any property or other assets, and was receiving financial assistance from others to meet his monthly expenses and other obligations. He also stated, and he testified at the hearing, that he earned $650 each month as a self-employed contractor. However, Appellant testified at the hearing, and the trial court found based on his testimony, that his

monthly income was more than what is indicated in his Statement and is sufficient to make certain monthly payments.

Further, although Appellant's Statement indicated that his monthly expenses were $6,620 per month, the testimony presented at the hearing established that his monthly expenses were inflated and substantially less. For instance, he listed in his Statement an expense of $1,550 per month in child support; however, as the trial court found, he was not paying it, and Warren averred in his motion that Appellant had not made a child support payment since September 2021. Appellant also failed to list certain assets in his Statement—a car and other properties—but acknowledged and conceded at the hearing that he owned or had previously owned them.

The trial court, having observed Appellant during the hearing, noted that Appellant was physically fit, healthy, intelligent, educated, and therefore presumably capable of securing gainful employment in addition to his self-employment projects. *See Rodgers v. Mitchell*, 83 S.W.3d 815, 819 (Tex. App.—Texarkana 2002, no pet.) (noting that voluntary unemployment may be considered by the trial court in its indigency determination); *Wallgren v. Martin*, 700 S.W.2d 28, 30 (Tex. App.—Dallas 1985, orig. proceeding) ("A litigant who voluntarily remains unemployed and lives by the generosity of relatives is not entitled to require the officers of the court to render services free [of charge] while other citizens are required to pay for similar services."); *In re J.P.N.*, No. 04-17-00633-CV, 2018 WL 626526, at *1 (Tex. App.—San Antonio Jan. 31, 2018, no pet.) (mem. op.) ("A trial court does not abuse its discretion in sustaining a contest to an affidavit of inability to pay when the record shows a party has the ability to earn money through future employment."); *cf. Illif v. Iliff*, 339 S.W.3d 74, 83 (Tex. 2011) (if an obligor is intentionally underemployed, a trial court may set child support based on the obligor's earning potential). Given the time that Appellant—as a pro se litigant—

has dedicated since 2020 to litigating, challenging, and appealing every dispute that has arisen during his ongoing feud with Katie and others, one could reasonably conclude that, had he exhausted the same or similar amount of time in searching for and securing gainful employment, of which is he is certainly qualified, the indigency argument that he advances in this case would not exist. Thus, considering the circumstances before us, we cannot say that Appellant has desired or made a good-faith effort, which he must, to do so or avoid purported indigency status. *See Higgins*, 257 S.W.3d at 686; *Rangel*, 2024 WL 2165372, at *6–7.

As the factfinder, the trial court assessed the credibility of the witnesses and the evidence presented and was within its discretion to resolve any inconsistencies in the evidence, and we defer to its credibility determinations. *Strickland*, 668 S.W.3d at 37; *Turner*, 265 S.W.3d at 714–15. Based on the record before us, the trial court could have reasonably determined, and it indeed found, that representations in Appellant's Statement concerning his available income, monthly expenses, employment opportunities, and ability to afford the payment of costs were false, inaccurate, misleading, and lacking in credibility.

We have reviewed the evidence under the applicable standards and conclude, as the trial court did, that (1) Appellant failed to conclusively establish that he was unable to afford to pay for the required court costs, *see Shields*, 526 S.W.3d at 480, and (2) the trial court's finding on that point is not against the great weight and preponderance of the evidence, *see Dow Chem.*, 46 S.W.3d at 242. Therefore, the trial court did not abuse its discretion when it sustained Warren's contest.

D. *Constitutional Arguments*

Appellant also asserts a variety of constitutional challenges. However, Appellant did not preserve any of his constitutional complaints for our review.

To preserve a complaint for appellate review, the record must show that the complaint was first presented to the trial court by a timely request, objection, or motion that "stated the grounds for the ruling that the complaining party sought from the trial court with sufficient specificity to make the trial court aware of the complaint," *and* that the trial court either ruled on or refused to rule on the request, objection, or motion. *See* TEX. R. APP. P. 33.1(a). Here, although Appellant broadly raised some of his constitutional complaints to the trial court in response to Warren's motion and at the hearing when the trial court ruled on Warren's contest—for instance, his prospective due process and open courts arguments—he did not request that the trial court rule on them. As such, the trial court never ruled on, or refused to rule on, these complaints.

In this context, we note that even constitutional challenges are waived if not first presented to and addressed by the trial court. *In re L.M.I.*, 119 S.W.3d 707, 711 (Tex. 2003). Thus, because Appellant failed to (1) address these complaints to the trial court, and (2) secure a ruling on them, he presents nothing for our review. TEX. R. APP. P. 33.1(a).

## IV. *This Court's Ruling*

We overrule Appellant's issues on appeal. Accordingly, we affirm the order of the trial court.

W. STACY TROTTER
JUSTICE

June 4, 2026

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.